FILED
2026 Mar-11  PM 01:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID STEWART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:24-cv-122-AMM** |
| | ) | |
| **CITY OF BESSEMER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case comes before the court on a motion for summary judgment filed by defendant City of Bessemer. Docs. 26–27. The motion is fully briefed. Docs. 32–33. For the reasons explained below, the motion is **GRANTED.**

## I.    BACKGROUND

This case involves an employment dispute. These are the material facts construed in the light most favorable to plaintiff David Stewart:

While employed as a police officer for the City of Bessemer, Mr. Stewart worked a "rivalry" football game between McAdory and City of Bessemer High School. Doc. 25-9 at 24; *see* Doc. 25-1 at 4. "During [the] fourth quarter, the game was playing, a large fight broke out between kids." Doc. 25-9 at 24. "So the other officers run over . . . to diffuse . . . that fight." *Id.* Before Mr. Stewart made it to the fight, "they put out that shots [were] fired at the game," so "[e]verybody started

running, fleeing." *Id.* at 25. The officers began evacuating the stands, and Mr. Stewart "observed some fighting going on when [he] got people moving out of the stadium." *Id.*

As Mr. Stewart was "walking towards the exit to get ready to clear the parking lot," an "older female" ran toward Mr. Stewart calling on him to intervene in the fight. *Id.* When he went around the corner, "[a group was] in each other's face and fixing to start fighting." *Id.* So Mr. Stewart "started yelling, giving commands" to the individuals to get in their cars and leave the stadium. *Id.* A large group of girls "complied" and "started walking off to get in their car." *Id.* at 25–26. One girl passed Mr. Stewart, heading toward the commotion and saying, "Fuck this shit. I'm fixing to whoop their ass. I'm fixing to whoop this bitch's ass." *Id.* at 26; Doc. 25-1 at 4. Mr. Stewart grabbed the girl's arm and repeated his instruction to leave the area. Doc. 25-9 at 26.

Mr. Stewart believed that "she kept trying [to] get towards these individual girls who [were] leaving," using expletives, expressing a desire to fight with the other girls, and "jerking away from [him]," so he "did a straight arm bar takedown, which is what they taught [him] in the academy . . . to cause the least damage to [the officer] and the individual." *Id.* at 26, 35. Mr. Stewart "did an arm bar takedown, put her in handcuffs for disorderly conduct and making threats, for harassment, and transported her to the jail." *Id.* at 26. Throughout the incident, Mr. Stewart did not

have his body camera turned on, nor did the other officers in the area. *Id.* at 35, 42. Mr. Stewart later learned that the girl was thirteen at the time of the incident. *Id.* at 27.

The girl's mother picked the girl up from the police station later that night. *Id.* at 29; Doc. 25-2 at 2–3. The girl's mother then filed a complaint with the Bessemer Police Department. Doc. 25-2; Doc. 25-9 at 30. She alleged that her daughter "experienced police brutality and mishandling of a minor." Doc. 25-2 at 2. She claimed that her daughter had been bruised, had been in pain since the incident, and had "been to the hospital in regards to this situation." *Id.* at 3–4. "Pursuant to the ordinary procedures of the Bessemer Police Department, Internal Affairs will perform an investigation any time a citizen submits a written complaint about a police officer." Doc. 25-12 at 2.

Mr. Stewart alleges that Lieutenant Kenneth Reese conducted an initial investigation and "he didn't see anything wrong" with Mr. Stewart's actions. Doc. 25-9 at 30. Mr. Stewart contends that "[s]omebody didn't like that idea that [Lieutenant Reese] was in alliance with it" so "they moved it from Lieutenant Reese, who was the lieutenant in Internal Affairs, and gave it to another guy who they put in Internal Affairs to do [the investigation]." *Id.* When asked during his deposition to identify the "they" that made the decision, Mr. Stewart testified, "It's only hearsay. They said it come from Woods, because Woods was the interim chief, and

he was the overseer of the whole thing . . . ." *Id.* Chief Mike Wood explained that he "had literally been made acting Chief at 6:00 o'clock the night before [the later personnel hearing]." Doc. 25-11 at 3. But Mr. Stewart believes that Chief Wood had been interim chief "before [the incident] took place." Doc. 25-9 at 38.

Roy A. Harris, the individual who conducted the subsequent investigation, explains that he was directed by "Chief of Police Michael Roper . . . to initiate an investigation" into Mr. Stewart's alleged noncompliance with the Bessemer Police Department's rules and/or regulations. Doc. 25-12 at 2. After the investigation, Mr. Harris "determined that there was enough evidence to support a finding that Officer Stewart had violated the Police Department's [Procedural General Orders] regarding conduct unbecoming an officer and the use of force." *Id.* at 2–3.[1]

On September 29, 2022, the police department conducted a personnel hearing. Doc. 25-9 at 36; Doc. 25-5. Following the hearing, Chief Wood "recommend[ed to Mayor Gulley] that Officer David Stewart receive a thirty (30) day suspension . . . and also be directed to seek counseling with EAP concerning this event." Doc. 25-5 at 1. When Chief Wood made the recommendation, he had seen the video depicting Mr. Stewart's conduct, and at the time of his recommendation, he "had not really

---

[1] Mr. Stewart disputes the City's description of Mr. Harris's conclusion and "asserts that there was not 'enough evidence' to support a conclusion that [he] violated the Police Department's rules and/or regulations regarding the use of force and officer conduct." Doc. 32 at 1. Regardless whether there was enough evidence, the fact remains that Mr. Harris concluded that there was enough. Doc. 25-12 at 2–3.

seen [any] other officer [in the video]." Doc. 25-11 at 3. But after Mr. Stewart brought to Chief Wood's attention at the hearing that there is another officer in the background of the video who performs a takedown of a girl, Chief Wood reviewed the video again. *Id.* at 3, 5. He concluded that the background officer's conduct was "not similar" to Mr. Stewart's. *Id.* After reviewing the video and attending the hearing, Chief Wood concluded that Mr. Stewart "was a bit excessive on a 13-year-old girl." *Id.* at 5. Chief Wood "went through old files of disciplinary action to find something similar to it and what was prescribed at that time, and that's how [he] came to 30 days." *Id.*

"[A]bout a week or so after the internal police department hearing," Mr. Stewart received a "termination letter." Doc. 25-9 at 37. Mayor Gulley decided against Chief Wood's recommendation because he "felt that because of the aggression that was displayed[,] [a thirty-day suspension] was not harsh enough and it warranted termination." Doc. 25-10 at 4–5. Based on Mayor Gulley's review of the video, he deemed Mr. Stewart's actions to be "excessive force for a 13-year-old child." *Id.* at 4. Mayor Gulley stated that upon his review of the video, he "did not see anyone else display the kind of aggression that [he] saw Officer Stewart display." *Id.* Mayor Gulley denied that anyone brought to his attention that the background officer had also taken a suspect to the ground "in a similar manner." *Id.* at 3. But he did admit that "a video was presented . . . to [him] of the incident." *Id.* at 2. And

5

Chief Wood explained that "Mayor [Gulley] was aware of [the other officer] after the fact." Doc. 25-11 at 5.

Mr. Stewart appealed his termination. Doc. 25-7 at 2. An official from the Personnel Board of Jefferson County conducted an evidentiary hearing, *id.* at 1, and "recommend[ed] that Stewart's Termination be reversed to a non-compensated 14-day suspension," along with "additional training in arrest procedures," *id.* at 6–7. The reviewing panel affirmed the reinstatement. Doc. 25-9 at 40–41.

Mr. Stewart filed this suit against the City of Bessemer and Chief Wood, Doc. 1 ¶¶ 9–10, alleging racial discrimination in violation of Title VII, retaliation in violation of 42 U.S.C. § 1983, and racial discrimination in violation of 42 U.S.C. § 1981, *id.* at 5–8. Mr. Stewart alleged that "[a] Caucasian officer who was involved in the same incident and used the same force as [Mr. Stewart] was not disciplined." *Id.* ¶ 30. Mr. Stewart later identified the "Caucasian officer" as Officer Wilkerson. *See* Doc. 25-9 at 41. Mr. Stewart testified that he "believe[d]" that Officer Wilkerson had used the same technique as Mr. Stewart. *Id.* But when shown the video that is on the record before this court, Doc. 28, Mr. Stewart explained that he "couldn't tell" whether it was the same technique because "everybody was in the way," Doc. 25-9 at 41.

Chief Wood filed a motion to dismiss, Doc. 6, and the court dismissed Mr. Stewart's retaliation claim, the only claim against Chief Wood, Doc. 23 at 5. The

City of Bessemer then filed a motion for summary judgment, Doc. 26, which is fully briefed, Docs. 32, 33.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party has carried its burden, Rule 56 requires that the nonmoving party "go beyond the pleadings" and establish that there is a material fact in genuine dispute. *Celotex*, 477 U.S. at 324–25; *see also* Fed. R. Civ. P. 56(c)(1)(A). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute if a reasonable jury could return a verdict in favor of the nonmoving party. *Id*.

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up). "[T]he plain language of Rule 56(c) mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

## III.   DISCUSSION

Mr. Stewart has two pending claims against the City: racial discrimination under Title VII of the Civil Rights Act of 1964 and racial discrimination in violation of 42 U.S.C. § 1981. *See* Doc. 1 at 5–8. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 similarly prohibits racial discrimination in employment contracts. *See* 42 U.S.C. § 1981; *see also Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). When evaluating claims under Title VII and Section 1981, the Eleventh

Circuit applies the same burden-shifting framework to both types of claims. *See Tynes*, 88 F.4th at 944.[2] Accordingly, the court will address Mr. Stewart's claims together.

"[T]o survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in [his] favor." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019). A plaintiff can do this in three ways: (1) "by satisfying the burden-shifting framework set out in *McDonnell Douglas*," *id.*, (2) by "present[ing] direct evidence of discriminatory intent," *id.* n.6, or (3) by "demonstrat[ing] a convincing mosaic of circumstantial evidence that warrants an inference of intentional discrimination," *id.* (cleaned up).

"[U]nder *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing" three things: "(1) that [he] belongs to a protected class, (2) that [he] was subjected to an adverse employment action, (3) that [he] was qualified to perform the job in question, and (4) that [his] employer treated similarly situated employees outside [his] class more favorably." *Id.* at 1220–21 (cleaned up). The "plaintiff must show that [he] and [his] comparators are similarly situated in all material respects." *Id.* at 1224 (cleaned up).

---

[2] "A § 1981 claim differs in two relevant ways from a Title VII claim—there is no cap on damages and the causation standards are higher." *Tynes*, 88 F.4th at 943. Because, as explained below, Mr. Stewart cannot carry his burden to show that race played a role in his discipline, the court need not address whether his claim satisfies the differing causation requirements under each statute.

"If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that [he] has been the victim of intentional discrimination." *Id.* (cleaned up).

The City argues that based on the evidence in the record, Mr. Stewart has not provided a comparator outside of his protected class who was similarly situated with him in all material respects. Doc. 27 at 9. Mr. Stewart's selected comparator is the "Caucasian officer who was [allegedly] involved in the same incident and used the same force as [Mr. Stewart did but] was not disciplined." Doc. 1 ¶ 30. But the record does not establish that Officer Wilkerson used the same maneuver or the same force as Mr. Stewart. *See* Doc. 28 (depicting Mr. Stewart conducting his takedown but having no clear view of the alleged comparator conducting a similar move). Mr. Stewart admits that after watching the video on the record before the court, he "can't tell" if Officer Wilkerson used the same technique as Mr. Stewart did. Doc. 25-9 at 41–42. He also admits that "everybody was in the way from that view," obstructing the viewer's ability to determine whether Officer Wilkerson's conduct was comparable to Mr. Stewart's. *Id.* at 41. Mr. Stewart has presented no evidence that

10

anyone filed a complaint about Officer Wilkerson's conduct, *see id.* at 42, though the complaint filed against Mr. Stewart is what triggered the investigation into his actions, pursuant to department policy, Doc. 25-12 at 2.

This court's independent review of the video supports Mayor Gulley's assertion that he "did not see anyone else display the kind of aggression that [he] saw Officer Stewart display." Doc. 25-10 at 4. The video shows Mr. Stewart leading the girl away from a crowd while gripping her arm. Doc. 28 at 0:00–0:03. After Mr. Stewart performs his takedown, another girl angrily approaches Mr. Stewart and the detained girl. *Id.* at 0:06–0:07. Officer Wilkerson repeatedly shoves the girl backwards, as she stomps and swings her arms in an apparent attempt to get close to Mr. Stewart and the girl he took down. *Id.* at 0:07–0:15. As Officer Wilkerson backs her away from Mr. Stewart, a group of officers comes between the camera and Officer Wilkerson, such that Officer Wilkerson's actions are not clearly seen. *Id.* at 0:15–0:18. The video shows the girl eventually restrained on the ground, but because of the officers in the line of view, the court cannot tell what maneuver Officer Wilkerson used or how much force he applied to the girl. *Id.*

Other than this inconclusive video, Mr. Stewart provides no evidence to establish that Officer Wilkerson's conduct was similar to Mr. Stewart's. "[A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis*, 918 F.3d at 1228 (cleaned up).

11

From the evidence before the court, Officer Wilkerson's behavior can reasonably be distinguished: (1) other than Mr. Stewart's speculative testimony that he "believe[s]" Officer Wilkerson used the same force, Doc. 25-9 at 41, Mr. Stewart has offered no evidence to establish what force Officer Wilkerson used nor that it was comparable to the force Mr. Stewart used; (2) Mr. Stewart has offered no evidence that anyone filed a complaint against Officer Wilkerson; and (3) Mr. Stewart has offered no evidence that the girl was taken to the jail rather than released at the game nor that the girl had to see a doctor because of her injuries from Officer Wilkerson's conduct, *see id.* at 42. Mr. Stewart admits that he has no knowledge whether any of his alleged comparisons are supported by the evidence. *See id.*

Mr. Stewart responds that "[a] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." Doc. 32 at 3 (quoting *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018)). But Mr. Stewart's own statements reflect uncertainty as to whether Officer Wilkerson used the same technique and force as Mr. Stewart did. *See, e.g.*, Doc. 25-9 at 41 ("Do you know if he used the same technique as you or not?" "I believe so."); *id.* at 41–42 ("And do you know if he used the same technique that you did to take the girl down?" "I can't tell."); *id.* at 42 ("Do you know if she suffered any injuries?" "I'm not sure."). So even if this court were to credit Mr. Stewart's self-serving statements in his deposition, they are speculative and unsupported conjecture, which is not enough

to defeat summary judgment. *See Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024) ("However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."); *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 956–57 (11th Cir. 2025) (holding that even when the plaintiff "has enough evidence to hypothesize" that the plaintiff's position was correct, "a jury cannot infer facts based on speculation and conjecture" (cleaned up)); *Garguilo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997) ("[T]o oppose [a] properly supported motion for summary judgment, [the nonmovant] must come forward with specific factual evidence, presenting more than mere allegations."); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("For factual issues to be considered genuine, they must have a real basis in the record. . . . For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." (cleaned up)).

Mr. Stewart's response also asserts that "[t]he Defendant observed [Officer] Wilkerson[']s use of force but [Officer] Wilkerson was not even investigated for the same or similar conduct. [Officer] Wilkerson was not disciplined." Doc. 32 at 6. But Mr. Stewart cites no evidence for these assertions. *See id.* That is not enough to show that racial discrimination occurred. *See Vega v. Invsco Grp., Ltd.*, 432 F. App'x 867, 872 (11th Cir. 2011) (holding that a party could not survive summary judgment

where it "merely presented argument, not evidence"). Accordingly, Mr. Stewart has failed to produce a sufficiently similar comparator.

Mr. Stewart responds that showing a comparator as required under the *McDonnell Douglas* framework "is not the only way" to prevail on a discrimination claim. Doc. 32 at 5. The City replies that even though this may be true as a matter of principle, it does not save Mr. Stewart's claims here because "[Mr.] Stewart provided no arguments or citations to any evidence meeting the 'convincing mosaic' method of demonstrating intentional discrimination against him, and he therefore waived any argument in support of it." Doc. 33 at 3 n.3.

The Eleventh Circuit recently provided a "roadmap" "for district courts to properly review summary judgment motions in discrimination cases. *Ismael v. Roundtree*, 161 F.4th 752, 764–65 (11th Cir. 2025). If, as is the case here, "the plaintiff cannot establish a prima facie case, [he] does not automatically lose on summary judgment." *Id.* at 764. Instead, courts "should ask whether [a plaintiff's] circumstantial evidence, when artfully adhered together and viewed as one, allows a reasonable juror to envision an image of [discrimination] and find in [the plaintiff's] favor." *Id.* In other words, "a district court must turn to evaluate the evidence before it, applying the duly promulgated Rule 56 summary judgment standard." *Id.* at 765.

14

Mr. Stewart has not provided a convincing mosaic of circumstantial evidence, and he has not demonstrated a genuine dispute of material fact. Mr. Stewart alleges that he "was terminated by the Defendant regarding a justified, on duty, use of force incident at a high school football game," while "[a] Caucasian officer who was involved in the same incident and used the same force as [Mr. Stewart] was not disciplined." Doc. 1 ¶ 30. From this, Mr. Stewart concludes that his race was the reason he was disciplined. *See id.* at 5–6. Beyond his own speculation and conclusory statements, Mr. Stewart has provided no evidence that he, or anyone involved in his disciplinary decision, ever saw another officer take similar action using the same force. Indeed, Mr. Stewart has never produced any evidence besides his own uncertain testimony depicting his version of the events.

Mr. Stewart acknowledges that he does not know whether anyone filed a complaint against Officer Wilkerson—as someone did against Mr. Stewart—though the complaint was what initiated the investigation into Mr. Stewart's actions. Mr. Stewart also concedes that he does not know whether Officer Wilkerson's actions led to injury, a doctor's visit, a complaint, or whether the girl was even taken to the police station. Yet Mr. Stewart maintains his unsupported conclusion that "[Officer] Wilkerson was not even investigated for the same or similar conduct. [Officer] Wilkerson was not disciplined." Doc. 32 at 6; *but see* Doc. 25-11 at 5 (explaining

that Chief Wood reviewed the footage again after Officer Wilkerson's conduct was brought to his attention, and "[t]he Mayor was aware of it after the fact" as well).

The record in this case gives a jury no reason to think that any difference in the investigation or discipline regarding Officer Wilkerson was based on anything other than a material difference between Officer Wilkerson's conduct and Mr. Stewart's conduct. *See Fernandez*, 135 F.4th at 956–57 (holding that even when the plaintiff "has enough evidence to hypothesize" that the plaintiff's position was correct, "a jury cannot infer facts based on speculation and conjecture" (cleaned up)); *Garguilo*, 131 F.3d at 999 ("[T]o oppose [a] properly supported motion for summary judgment, [the nonmovant] must come forward with specific factual evidence, presenting more than mere allegations."); *Ellis*, 432 F.3d at 1326 ("For factual issues to be considered genuine, they must have a real basis in the record. . . . For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." (cleaned up)). Based on the evidence Mr. Stewart has provided, no reasonable jury could find in his favor.

Mr. Stewart argues that "there are genuine issues of material fact," including "whether the Interim Chief of police, Mike Wood, ignored what he saw the Caucasian officer do on the video of the incident choosing to focus on [Mr. Stewart], who is African American," and "whether Mayor Gulley also focused only on the African American [Mr. Stewart], choosing to treat the similarly situated Caucasian

16

officer more favorably." Doc. 32 at 6. The record does not reveal any evidence of any such dispute or choice. Mayor Gulley and Chief Wood both testified that "no matter the color of the individual, if [the individual] did something wrong, [Mayor Gulley and Chief Wood] would treat [the individual] the same." Doc. 25-11 at 5; Doc. 25-10 at 4 ("I don't care if you're purple . . . ."). Indeed, Chief Wood and Mayor Gulley both reviewed the evidence of Officer Wilkerson's conduct—a point that Mr. Stewart highlights as an "undisputed fact," Doc. 32 at 2,—and the only record evidence on the issue is that they concluded that the video simply did not show "anyone else display the kind of aggression" that Officer Stewart displayed. Doc. 25-10 at 4; Doc. 25-11 at 5.

Mr. Stewart also disputes the City's assertion that Chief Wood "played no part in the police investigation," Doc. 27 at 6, by pointing to Chief Wood's testimony that he watched the video of the incident and searched for comparable incidents in forming his recommendation, Doc. 32 at 2. The record reflects that whatever Chief Wood's involvement in the investigation, his ultimate decision to discipline Mr. Stewart was based on the evidence before him. Accordingly, this is not a material dispute. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (cleaned up)).

Accordingly, there is no genuine dispute as to material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) ("When the moving party has carried its burden under Rule 56(c) [to show an absence of a material dispute], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." (cleaned up)). Because the court finds that Mr. Stewart has not established a viable claim for a Section 1981 or Title VII violation, the court need not address the City's argument about whether a municipality may be liable under Section 1981 and Section 1983 absent an established policy or custom causing the deprivation. *See* Doc. 27 at 12.

## IV.    CONCLUSION

For the reasons explained above, the City's motion for summary judgment is **GRANTED**.

**DONE** and **ORDERED** this 11th day of March, 2026.



**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE